IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ZABRIEL L. EVANS,

                Plaintiff,

v.                                                        Case No. 18-3193-JWB

DAN SCHNURR, et al.,

                Defendants.

## MEMORANDUM AND ORDER

This case comes before the court on Defendants' motion to dismiss or, in the alternative, for summary judgment. (Doc. 40.) The motion has been fully briefed and is ripe for decision. (Docs. 41, 47, 52, 54.) Defendants' motion is GRANTED for the reasons stated herein.

## I.      Procedural History and Uncontroverted Facts

Plaintiff Zabriel Evans is currently incarcerated at the Sedgwick County Detention Facility. Prior to being incarcerated in Sedgwick County, Plaintiff was incarcerated at the Hutchinson Correctional Facility ("HCF"). All of the incidents relevant to this matter occurred at HCF. Since July 2014, Plaintiff has been issued the following disciplinary reports: battery (12 times); lewd acts (exposing oneself) (49 times); other lewd acts (12 times); disobeying orders (29 times); and threatening or intimidating any person (13 times). (Doc. 41, Exh. A.)

On May 20, 2017, Plaintiff exposed his penis to a female officer.[1] HCF Officer Kyle Chick instructed Plaintiff that he was going to be placed in restraints to be moved to a more restricted area ("MRA") cell because he exposed himself to the female officer. (Doc. 22, Exh. 7.) Plaintiff

---

[1] Plaintiff attempts to controvert this fact by stating that the female officer invited this exposure after she ordered him to remove his sheet from the cell door. Plaintiff, however, has not controverted the fact that he exposed his penis to a female officer.

refused to comply.[2]  Plaintiff told Chick that he was going to start battering officers if he was

moved to an MRA cell.[3]  Chick then attempted to use pepper spray[4] in order to gain compliance.

Plaintiff did not comply and instead put his mattress against the cell door to block the spray.  (Doc.

47 at 8.)  Chick then compiled a 5-man extraction team to assist in a forced cell move.  The forced

cell move was recorded and the video of that recording has been viewed by the court.  (Doc. 22,

Exh. 15.)

The forced cell extraction began around 1:20 a.m.  The cell extraction team included

Defendant Corrections Officer Dylan Darter, along with four additional officers that are not named

in the Plaintiff's amended complaint as Defendants.  Darter and three other members of the

extraction team were going to enter the cell and a fifth team member operated the camera.  The

extraction team was dressed in riot gear.  When Chick and the team members arrived at Plaintiff's

cell, it is clear that the mattress remained in front of the cell door.  This resulted in an inability to

see Plaintiff.  Chick can be heard asking Plaintiff to cuff up.  Plaintiff stated that he didn't do

anything.  Chick again asked Plaintiff if he would comply with orders to cuff up.  Plaintiff

responded by stating "fuck you."  (Doc. 41 at 4.)  Chick continued to advise Plaintiff that he needed

to comply with his orders to cuff up.  Plaintiff continued to argue and quote KDOC policies.  Chick

---

[2] Plaintiff's affidavit states that he did not refuse to move but rather that he was "trying to gain understanding if Captain Kyle Chick was violating" KDOC policies.  (Doc. 47 at 8.)  Plaintiff's affidavit does not contradict the fact that he refused orders to be placed in restraints as Plaintiff's affidavit states that he repeatedly was questioning Chick and arguing with him regarding the policy.  (Doc. 47, Exh. 1 at 2-3.)

[3] Plaintiff attempts to controvert this fact by claiming that he only said he would file grievances.  (Doc. 47 at 9.) Plaintiff's affidavit only states that he was not "threatening or combative."  (Doc. 47, Exh. 1 at 7.)  These allegations "are entitled to no weight on summary judgment, because they are conclusory, without providing any factual basis for the conclusions."  *Evans v. Cawthorn*, No. 16-3095-DDC-ADM, 2019 WL 5787952, at *7 (D. Kan. Nov. 6, 2019) (quoting *Lunow v. City of Oklahoma City*, 61 F. App'x 598, 607 (10th Cir. 2003)).  In the disciplinary report cited by Defendants, Chick stated that Plaintiff refused his orders and said that he was going to start battering officers.  Plaintiff was charged with violating two different KDOC policies, disobeying orders and threating or intimidating.  The hearing officer found Plaintiff guilty of the violations.  (Doc. 22, Exh. 10.)

[4] Plaintiff refers to this as a chemical agent or vapor spray.  (Doc. 30.)  The *Martinez* report states that OC spray and vapor were used.  (Doc. 22 at 6-7.)  Although not defined in the pleadings, OC (oleoresin capsicum) is a chemical agent that is commonly referred to as pepper spray or mace.  *See Fogarty v. Gallegos*, 523 F.3d 1147, 1152 (10th Cir. 2008).  This order will refer to the chemical agent as pepper spray throughout.

gave Plaintiff several orders, including ordering him to put down the mattress, be placed in restraints, and to cuff up. Plaintiff continued to argue. After almost four minutes of trying to get Plaintiff to comply with orders, Chick attempted to spray a pepper spray into the cell through the food opening. It was unsuccessful due to the placement of Plaintiff's mattress. Plaintiff continued to argue with Chick. Chick then attempted to maneuver the mattress to spray the chemical. After two unsuccessful attempts, Chick was successful in spraying around the edge of the mattress. (Docs. 22, Exh. 15; 41 at 4-6.)

Chick and the team can be seen on the video waiting for Plaintiff to remove the mattress and comply with the orders to cuff up. Chick did not attempt to use any additional pepper spray during this time. Chick repeatedly told Plaintiff to put the mattress down and comply. After more than six minutes, Plaintiff removed the mattress from the cell door, placed it down, and laid down on the floor. The team can be seen entering the cell. No physical struggle can be heard on the video. The video was dark as the lights are off in the cell. Plaintiff contends that Darter punched him in the head and ribs during the cell entry. (Doc. 47 at 8.) Darter attests that he did not strike Plaintiff during the extraction. (Doc. 41, Exh. B.) Plaintiff was placed in restraints and then led from his cell. Plaintiff told the officers that "you know this means war, right?" (Docs. 22, Exh. 15; 41 at 6.) Plaintiff was led to a shower where he was decontaminated. Plaintiff was then placed in a new cell and examined by nurse Stephanie Carter. Carter did not see any injuries. Plaintiff stated that he couldn't see due to the pepper spray. Plaintiff did not complain about being punched or express that he had any other injuries. Plaintiff's restraints were removed and the officers exited the cell. (Docs. 22, Exh. 15; 41 at 6.) Approximately two hours after the cell extraction, Plaintiff threw a cup of unknown liquid on an officer's face and stated, "Tell the Warden that he better

prepare for war." (Doc. 22, Exh. 12 at 1.)[5] Defendant Steve Foster, an HCF corrections officer, had no role in the cell extraction.[6]

Plaintiff was charged with undue familiarity and lewd acts due to his conduct before the cell extraction.[7] (Doc. 22, Exh. 11.) The hearing officer found Plaintiff guilty of the charges. Plaintiff was also charged with violating two different KDOC policies, disobeying orders and threating or intimidating, due to his conduct prior to and during the cell extraction. The hearing officer found Plaintiff guilty of the violations. (Doc. 22, Exh. 10.) Plaintiff was also charged and found guilty by a hearing officer for his conduct related to throwing liquid on an officer and threatening war. (Doc. 22, Exh. 12.)

Plaintiff filed a grievance regarding the forced cell extraction in early June. In that grievance, Plaintiff claimed that the officers used excessive force during the cell extraction. Plaintiff claimed that he was being punished for masturbating and that this violated his Due Process rights. (Doc. 22, Exh. 16 at 8-9.) Plaintiff exhausted the grievance by appealing the denial. On July 15, Plaintiff appealed the denial to the warden.

On July 31, Plaintiff was again masturbating when a female officer was making her rounds. Plaintiff was moved to an MRA cell. Plaintiff was later found guilty of lewd acts by a hearing officer. (Doc. 22, Exh. 13.) Plaintiff filed a grievance as a result of being moved to the MRA cell. Plaintiff asserted in his grievance that the actions taken were in retaliation of his previous grievance. (Doc. 22, Exh. 17.)

---

[5] Although Plaintiff generally disputes this fact by saying that he did not batter staff or make threatening statements, his affidavit that he cites in support merely states that he was having a panic attack. Moreover, Plaintiff was charged with disciplinary action for his conduct and was found guilty of the charges. (Doc. 22, Exh. 12 at 2-4.)

[6] Plaintiff asserts in his affidavit that Steve Foster gave the order to Chick regarding the use of the pepper spray. Both Chick and Foster have attested that Foster was not involved. (Doc. 22, Exhs. 6, 7.) Plaintiff offers no basis for his personal knowledge that Foster was involved. The evidence in the record clearly shows the officers involved in the cell extraction and there is no evidence that Foster played a roll in that extraction.

[7] The officer's report states that Plaintiff stated the following to female officer while exposing himself, "come here girl, I know you're a freak!" (Doc. 22, Exh. 11 at 1.)

Plaintiff filed a complaint on August 2, 2018. After the Kansas Department of Corrections filed a *Martinez* report, Plaintiff was granted leave to file an amended complaint. (Doc. 29.) Plaintiff's amended complaint sets forth claims under 42 U.S.C. § 1983. Plaintiff contends that prison officials violated his Eighth Amendment right to be free from excessive force, his right to a hearing prior to punishment, and retaliated against him for filing a grievance. Plaintiff also contends that KDOC policy IMPP 12-111 (use of force) is unconstitutional. Plaintiff has named as defendants Chick, Darter, and Foster in their individual capacities. Foster is also being sued in his official capacity. Plaintiff has also brought suit against Dan Schnurr, the warden of HCF, and Douglas Burris, the Kansas Secretary of Corrections, in their official capacities. Defendants now move for dismissal, or in the alternative, summary judgment. (Doc. 40.) Because the court has considered the affidavits and other evidence, including the video, the court will rule on the motion for summary judgment. As required by Local Rule 56.1(f), Defendants provided Plaintiff, who is proceeding pro se, with the required notice regarding motions for summary judgment. (Doc. 42.)

## II.       Summary Judgment Standards

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" when it is essential to the claim, and the issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor. *Haynes v. Level 3 Commc'ns*, 456 F.3d 1215, 1219 (10th Cir. 2006). The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim. *Thom v. Bristol—Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). The nonmovant must then bring forth specific facts showing a genuine issue for trial. *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

Any statement of fact that has not been controverted by Plaintiff's affidavit or an exhibit is deemed to be admitted. D. Kan. Rule 7.4. Also, the court will only consider facts based on personal knowledge or supported by the exhibits. Conclusory allegations are not sufficient to create a dispute as to an issue of material fact. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The court views all evidence and reasonable inferences in the light most favorable to the nonmoving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

### III.    Analysis

To prevail on a claim under § 1983, Plaintiff must show the deprivation of a right secured by the Constitution and laws of the United States committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). It is undisputed here that Defendants were acting under color of state law at all relevant times. In addition to arguing that Plaintiff's claims fail to state a claim, Defendants assert they are entitled to qualified immunity on Plaintiff's claims of excessive force.

### A.    Eleventh Amendment

Plaintiff has made claims against Schnurr, Burris, and Foster in their official capacities. Defendants move for dismissal of any claim against these Defendants in their official capacities to the extent that these claims are for monetary damages. Claims for monetary damages against a state official in his official capacity are construed as claims against the State and are therefore barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985). To the extent Plaintiff is seeking damages for claims against these Defendants in their official capacities, the claims are dismissed. Plaintiff's claim for injunctive relief is discussed, *infra*.

### B.    Due Process Claim

Plaintiff alleges that Defendants violated his right to due process by failing to have a "fair hearing on" the allegations by the female officer "before attacking plaintiff." (Doc. 30 at 4.) "[W]hen prison officials must act to 'preserve internal order and discipline,' we afford them 'wide-ranging deference.'" *Redmond v. Crowther*, 882 F.3d 927, 938 (10th Cir. 2018) (citing *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986). Plaintiff fails to cite any authority, and the court has not located any authority, for the proposition that a hearing is required prior to the use of force by officials in a prison. Such a requirement would be contrary to the ability to preserve order and discipline in a prison setting. Moreover, the record clearly establishes that Plaintiff was provided all the process that was due as a result of his conduct. Plaintiff was provided notice of the allegations, a hearing, and a written statement of the disposition. (Doc. 22, Exhs. 10, 11.) This is all the process that is due. *Harrison v. Morton*, 490 F. App'x. 988, 993 (10th Cir. 2012) (setting forth the due process requirements).

In his brief, Plaintiff contends that his claim is not one of a fair hearing on the allegations. (Doc. 47 at 26.) Plaintiff asserts that he has a right to a hearing prior to a placement in the MRA cell because IMPP 20-105 (the policy regarding transfer to a more restricted area) creates a liberty interest. Plaintiff further asserts that he lost access to his property as a result of the transfer. Plaintiff's amended complaint, however, clearly states that his Due Process claim is based on the failure to provide him with a hearing before the use of force. These new allegations are not contained in Plaintiff's amended complaint.

A court must liberally construe a pro se complaint and apply "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). In drafting a complaint, Plaintiff "must explain what each defendant did to [Plaintiff]; when the defendant did it; how the defendant's action harmed [Plaintiff]; and, what specific legal

right the Plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

Plaintiff's amended complaint does not contain the allegations that he raises in his response, and his attempt to raise new claims for the first time in opposition to Defendants' motion is improper. *See id.*; Fed. R. Civ. P. 8 (setting forth requirements for a claim for relief); *Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007) ("Rule 8 serves the important purpose of requiring plaintiffs to state their claims intelligibly so as to inform the defendants of the legal claims being asserted."). Moreover, as Plaintiff's new claims surround the disciplinary action taken on May 20, the court finds that the subsequent disciplinary hearing and notices provided Plaintiff with due process. As is clear from the record, Plaintiff chose not to participate in the hearing. (Doc. 22, Exhs. 10 at 4-5, 11 at 4.)

Therefore, Defendants' motion for summary judgment on Plaintiff's Due Process claim is granted.

### C.    First Amendment Claim

Plaintiff asserts that Defendants, specifically Foster, retaliated against him for filing his initial grievance and appeal.[8] Plaintiff alleges that the retaliation occurred on July 31, 2017, when he was again moved to an MRA cell after exposing himself again while a female officer was making rounds. Defendants move for summary judgment on the basis that Plaintiff has not shown that Defendants' actions, in placing Plaintiff in an MRA cell and charging Plaintiff with

---

[8] The court notes that Plaintiff initially believed that Foster had used the pepper spray on May 20 instead of Chick. (Doc. 47, Exh. 1 at 8.) As is clear from the record, Foster was not involved in the May 20 incident other than approving the use of force form.

disciplinary action for Plaintiff's conduct on July 31, were taken in retaliation against Plaintiff for filing the first grievance and related appeals.

A prison official cannot "retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts." *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010) (quoting *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990)). Plaintiff may prove retaliation by showing the following: "(1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Shero v. City of Grove, Okl.*, 510 F.3d 1196, 1203 (10th Cir. 2007) (citation omitted).

With respect to the first element, Plaintiff has established that he engaged in constitutionally protected activity in that Plaintiff filed a grievance and appeals regarding the force used in the May 20 cell extraction. *See Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006) ("prisoner's first amendment right to petition the government for redress of grievances encompasses the filing of inmate administrative appeals.") The second element requires a showing that the injury would chill a person of ordinary firmness from engaging in the protected activity. Considered objectively, Plaintiff's allegations that he was moved to an MRA cell and deprived of his property is sufficient to support this element. *See Lewis v. Clark*, 577 F. App'x 786, 799 (10th Cir. 2014) (denial of access to prison law library); *Frazier v. Dubois*, 922 F.2d 560, 561–62 (10th Cir. 1990) (prison transfer).

Turning to the third element, Plaintiff must show that the action was "substantially motivated as a response to" the filing of Plaintiff's grievance and appeal. *Shero*, 510 F.3d at 1203.

Plaintiff must also show that "but for the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place." *Turner v. Falk*, 632 F. App'x 457, 460 (10th Cir. 2015). Plaintiff claims that Foster moved him to an MRA cell in retaliation for filing a grievance against Foster. The evidence in the record is that Plaintiff was moved to an MRA cell and disciplined for masturbating on two occasions on July 31 when a female officer was doing her rounds. (Doc. 22, Exhs. 3; 13 at 1-7; 17 at 6.) Plaintiff was subsequently found guilty of committing lewd acts. (Doc. 22, Exh. 13.) Plaintiff attempts to dispute these facts by claiming that Foster "confirmed that he was moving Evans to a [sic] MRA cell in retaliation." (Doc. 47 at 11.) Plaintiff cites to his affidavit in support of his argument that the facts are controverted. In that affidavit, Plaintiff states that Foster "admitted" that Plaintiff was "being harassed because of his grievance." (Doc. 47, Plaintiff's affidavit at ¶ 17.)

In opposing summary judgment, an affidavit is to "set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." *Hall*, 935 F.2d at 1111. Plaintiff's affidavit states that Foster "admitted" that he was harassing Plaintiff. (Doc. 47, Plaintiff's affidavit at ¶ 17.) Plaintiff does not attest to what, exactly, Foster allegedly told Plaintiff. Reviewing Plaintiff's grievance filed at the time, Plaintiff recounted what occurred after the incident on July 31. Plaintiff allegedly asked another officer to get Foster to come down and talk to him about the situation because Plaintiff "felt that it was retaliation." (Doc. 22, Exh. 17 at 8.) After Foster came down, Plaintiff stated that he asked Foster, if he was "admitting to retaliating against me for the excessive force grievance that I filed against you?" (*Id.*) To which, Foster allegedly replied that he was the "top dog. I do what the hell I want!" (*Id.*) While Foster's alleged response may be unprofessional, it is not an affirmation that he was in fact moving Plaintiff to an MRA cell because of Plaintiff's grievance regarding the May 20 incident. Plaintiff has not offered

any other evidence that Foster made these statements or any other statements. Plaintiff has also not introduced any other evidence that Foster acted in retaliation. Plaintiff's legal conclusion contained in his affidavit, that the action was taken in retaliation, is not sufficient to create a dispute. (Doc. 47, Plaintiff's affidavit at ¶ 16.)

In order to defeat summary judgment, Plaintiff's version of the facts must be supported by the record. *See Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1312 (10th Cir. 2009) ("a plaintiff's version of the facts must find support in the record: more specifically, as with any motion for summary judgment, when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts.") It is not. The record shows that Plaintiff was committing lewd acts on July 31. Thus, contrary to Plaintiff's conclusory allegation that he was moved to an MRA cell in retaliation for his excessive force grievance, the evidence conclusively demonstrates that these lewd acts resulted in the decision to charge Plaintiff with discipline and move him to an MRA cell due to the fact that he was "a security risk to the female staff working in Restrictive Housing" on July 31. (Doc. 22, Exh. 17 at 6.) Moreover, Plaintiff's conduct on July 31 was not an isolated act as the record shows that he has had a significant number of disciplinary actions for the same conduct. (Doc. 22, Exh. 1.) Plaintiff has not introduced any facts that would support a finding that Foster moved Plaintiff on July 31 due to Plaintiff's protected activity. In light of the uncontroverted evidence that Plaintiff was found guilty of the charged conduct on July 31 and the evidence supports that finding, Plaintiff has not shown that but for Foster's retaliatory motive he would not have been moved to an MRA cell and disciplined. This finding is bolstered by the fact that Plaintiff was previously subject to the exact same treatment by HCF officers on May 20, 2017, when he exposed himself to a female officer.

Consequently, the only allegation that supports his retaliation claim is the close temporal proximity of the cell move and disciplinary action to the protected activity. This does not constitute sufficient circumstantial proof of a retaliatory motive to state a claim. *See Leek v. Miller*, 698 F. App'x 922, 926 (10th Cir. 2017). Therefore, Defendants' motion for summary judgment on this claim is granted.

### D. Excessive Force Claim

"Individual defendants named in a § 1983 action may raise a defense of qualified immunity." *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 460 (10th Cir. 2013). Qualified immunity "shields public officials ... from damages actions unless their conduct was unreasonable in light of clearly established law." *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008) (quotations omitted). When the defense of qualified immunity is asserted, a plaintiff must show: "(1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Cillo*, 739 F.3d at 460. For a right to be clearly established, the contours of that right must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Plaintiff's excessive force claim is based on the use of pepper spray by Chick and the alleged punches to Plaintiff's head and ribs by Darter during the forced cell extraction. Plaintiff thus bears the burden of establishing that there was a violation of his rights and that those rights were clearly established.

An Eighth Amendment excessive force claim has two parts: (1) an objective part that asks "if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation,"

and (2) a subjective part where Plaintiff must show that prison officials acted with a "sufficiently culpable state of mind." *Redmond*, 882 F.3d at 936 (quoting *Giron v. Corr. Corp. of Am.*, 191 F.3d 1281, 1289 (10th Cir. 1999)).

Pepper Spray

Defendants argue that the force used on May 20 did not rise to a constitutional violation. The court agrees. The court initially notes that the Tenth Circuit has recognized that "pepper spray is an instrument with which prison officers wield their authority, or force, and thus its use implicates the excessive use of force." *Toney v. Harrod*, 372 F. Supp. 3d 1156, 1163 (D. Kan. 2019) (citing *Norton v. City of Marietta, OK*, 432 F.3d 1145, 1154 (10th Cir. 2005). In determining whether the use of the spray is objectively harmful, the court is to look at "how long [the inmate] was sprayed and whether he was adequately irrigated afterwards or left to suffer unnecessarily." *Norton*, 432 F.3d at 1154.

Plaintiff asserts that he was sprayed several times unnecessarily and that he suffered a loss of vision. Plaintiff also contends that he has experienced trouble breathing since this incident. The uncontroverted facts show that Chick employed the pepper spray at least four times on May 20, 2017. Based on the video and uncontroverted facts, most of those bursts did not come into contact with Plaintiff because he had his mattress blocking the cell door. After the incident, Plaintiff was provided with prompt medical care and taken to the shower to rinse off. Viewing the evidence in a light most favorable to Plaintiff, the court finds that a charitable view of the evidence presented might create a dispute as to whether the pepper spray was objectively harmful. *See Grissom v. Roberts*, No. 09-3128-SAC, 2009 WL 2601260, at *6 (D. Kan. Aug. 24, 2009) (allegations of lasting injury can be sufficient to meet the objective inquiry).

However, Plaintiff must also show that Chick was acting with a sufficiently culpable state of mind. "The core inquiry [here] is whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Ali v. Duboise*, 763 F. App'x 645, 650 (10th Cir. 2019) (citation omitted). To answer this core inquiry, the court looks at the following: 1) the extent of Plaintiff's injury; 2) "need for application of force;" 3) "the relationship between that need and the amount of force used;" 4) "the threat reasonably perceived by the responsible officials;" 5) "and any efforts made to temper the severity of a forceful response." *Green v. Denning*, 465 F. App'x 804, 807 (10th Cir. 2012) (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

With respect to the first factor, Plaintiff immediately complained of loss of vision. That loss, however, was apparently temporary as Plaintiff has not set forth any facts to support a finding that he has any permanent vision loss. Plaintiff also complains of chest pain and problems breathing. The medical records, however, do not show that Plaintiff has made these complaints to the medical staff at HCF. Based on the limited nature of the injuries and the lack of any medical documentation that Plaintiff suffered any severe injuries, this factor does not support a finding that Chick acted maliciously or sadistically.

The second factor also weighs in Defendants' favor. While Plaintiff has asserted that Chick used the spray as punishment for Plaintiff's conduct in masturbating, the uncontroverted facts tell a different story. Plaintiff was exposing himself to a female officer, a charge on which he was later found guilty. Plaintiff then refused to comply with Chick's orders and threatened the officer by saying that he was going to batter officers if they attempted to move him. The video then shows Plaintiff continuing to refuse to comply with orders even though Chick requested Plaintiff to comply for several minutes prior to the first attempt to use the pepper spray. Plaintiff's actions

were "clearly contrary to the legitimate penological interest of maintaining control and discipline in the prison facility," and "[u]nder such circumstances, the use of some physical force such as pepper spray can hardly be considered repugnant to the conscience of mankind." *Evans v. Cawthorn*, No. 16-3095-DDC-ADM, 2019 WL 5787952, at *7 (D. Kan. Nov. 6, 2019) (quoting *Grissom v. Roberts*, No. 09-3128-SAC, 2009 WL 2601260, at *6 (D. Kan. Aug. 24, 2009)). "[P]risoners 'cannot be permitted to decide which orders they will obey, and when they will obey them.'" *Redmond*, 882 F.3d 927, 938 (10th Cir. 2018) (quoting *Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984)).

The remaining factors also support a finding that the use of force was to maintain and restore order. Plaintiff repeatedly refused to comply with Chick and could be heard yelling at the officers while in his cell. Plaintiff had also threatened that he would batter the officers if they attempted to move him so it was reasonable to use a pepper spray instead of attempting to open the cell door and remove Plaintiff from the cell. The video also supports a finding that Chick repeatedly attempted to gain Plaintiff's compliance prior to using force and prior to each application of the pepper spray. Also, upon determining that the last spray was successful and got around the mattress, Chick patiently waited for Plaintiff to comply with his demands instead of continuing to spray the chemical at Plaintiff. The use of pepper spray on an inmate who is refusing to comply with an officer's orders does not rise to a constitutional violation. *See Evans*, 2019 WL 5787952, at *7 (citing *Lane v. Carty*, No. 09-3153-SAC, 2009 WL 3125469 at *1 (D. Kan. Sept. 28, 2009)).

Based on a review of factors, the uncontroverted evidence supports a finding that Chick's use of the pepper spray was to maintain or restore discipline. The uncontroverted facts show that Plaintiff had committed lewd acts, threatened Chick, and continuously refused to comply with

Chick's orders. Plaintiff's actions "were clearly contrary to the legitimate penological interest of maintaining control and discipline in the prison facility." *Lane*, 2009 WL 3125469 at *3. The court finds that the use of force by Chick was done to maintain or restore discipline and not done maliciously and sadistically to cause harm. *See Evans*, 2019 WL 5787952, at *7 (use of pepper spray on inmate that resisted restraint did not violate constitutional rights); *Lane*, 2009 WL 3125469 at *3 (no violation for use of pepper spray on resisting inmate); *Grissom*, 2009 WL 2601260, at *6 (same).

Therefore, Plaintiff has not shown that Chick's actions in the use of the pepper spray violated his constitutional rights.

Moreover, the court finds that no precedent clearly establishes Plaintiff's right not to have pepper spray used against him in these circumstances. "To qualify as clearly established, a constitutional right must be 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Redmond*, 882 F.3d at 935 (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). "And although there need not be a case precisely on point for a right to be clearly established, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id.* (citation omitted).

Plaintiff thus has the burden to prove that he had a clearly established right to be free from prison guards spraying him with pepper spray when he had threatened officers, barricaded himself in his cell, and refused to comply with an order to cuff up. Plaintiff has failed to identify any authority that would establish that he has such a right. The Tenth Circuit has not held that an inmate who is failing to comply with orders has a right to be free from the use of a pepper spray. The circuit has held that the use of pepper spray is prohibited "where no legitimate penological purpose can be inferred from a prison employee's alleged conduct." *DeSpain v. Uphoff*, 264 F.3d

965, 978 (10th Cir. 2001). In *DeSpain*, the prison official used the pepper spray as "an act of humor." *Id.* at 977. In such a case, the circuit held that the facts supported a finding that the spray was used maliciously. *Id.* at 978. Such is not the case here. As discussed, the uncontradicted facts support a finding that Plaintiff was refusing to comply with Chick's orders.

Therefore, Chick is entitled to qualified immunity on Plaintiff's claim of excessive force for the use of the pepper spray.

Alleged Force Used by Darter

Plaintiff also claims that his constitutional rights were violated by the alleged use of excessive force by Darter during the cell extraction. Plaintiff alleges that he was punched in the back of the head and ribs during the extraction and that this resulted in swelling and a laceration. Darter denies punching Plaintiff. Defendants move for summary judgment on the basis that Plaintiff's alleged injury was minimal and does not rise to a constitutional violation.

As discussed, to establish a violation of Plaintiff's right to be free from excessive force, Plaintiff must show that the "wrongdoing was objectively harmful enough to establish a constitutional violation," and that prison officials acted with a "sufficiently culpable state of mind." *Redmond*, 882 F.3d at 936. The court agrees with Defendants that the alleged harm by Darter was not objectively harmful enough to establish a violation. Allegations of the application of de minimis force "fall short of what is required to establish a constitutional violation." *Marshall v. Milyard*, 415 F. App'x 850, 854 (10th Cir. 2011). In *Marshall*, the circuit recognized that the absence of a serious injury is relevant to the inquiry and that the extent of the injury "may ... provide some indication of the amount of force applied." *Id.* at 853 (citing *Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178 (2010)).

In this case, Plaintiff alleges that he had some swelling and a laceration. Plaintiff does not provide any additional facts regarding the extent of the laceration and the swelling or how long his head was swollen. Additionally, the medical records do not show that he received any treatment for the laceration or swelling. Moreover, although the nurse explicitly asked Plaintiff about his injuries, Plaintiff did not state that he had any injury to his head or his ribs immediately after the alleged injury occurred. Plaintiff has not asserted that he has any lasting injury due to the alleged use of force by Darter. Minor injuries support a finding of de minimis force that does not rise to a constitutional violation. *Id.* at 854.

In this case, the record is completely void of any indication that Plaintiff had sustained an injury. The only indication of an injury is Plaintiff's allegation that he suffered an injury. Moreover, in his grievance filed at HCF and the amended complaint, Plaintiff claimed that he was punched when an officer was screaming "stop resisting." (Docs. 22, Exh. 16 at 9; 30, Plaintiff's Affidavit at 3.) The video does not support Plaintiff's version of events as the cell extraction occurred without sounds of a struggle or yelling. Foster, Chick, Officer Matthew Wagner, and Stephanie Carter, RN, who were present on May 20, 2017, have all attested that Plaintiff was not struck during the cell extraction. (Doc. 22, Exhs. 6, 7, 8, 9.)

The medical records from HCF do not show that Plaintiff complained of an injury or that he received any treatment due to a head injury. "A party cannot manufacture a genuine issue for trial based solely on unsubstantiated allegations." *Marquez v. Watkins*, 163 F. App'x 699, 702 (10th Cir. 2006) (citing *Bones v. Honeywell Int'l, Inc*., 366 F.3d 869, 875 (10th Cir. 2004)). The video of the incident does not show the alleged use of force although Plaintiff's cell light was off during the extraction. During the video, Plaintiff does not complain to the nurse of any injury to his head or ribs. Plaintiff's only complaint was that he had vision problems. Nurse Carter

examined Plaintiff after the cell extraction and did not observe any injuries. (Doc. 22, Exh. 9.) Plaintiff's version of events is contradicted by Carter's sworn affidavit, Darter's affidavit, the affidavits of the other officers, the video, and the absence of any injury in his medical records. Because Plaintiff has failed to establish that he suffered any injury by Darter's alleged use of force during the cell extraction or any lasting injury as a result of the force, the court finds the alleged use of force by Darter is de minimis and does not rise to a constitutional violation. *Marshall*, 415 F. App'x at 854.

Defendants' motion for summary judgment on Plaintiff's claim of excessive force is granted.

### E.     Supervisory Defendants

The remaining Defendants were not involved with the use of force by Chick and Darter. These Defendants have supervisory roles. In order to state a claim against a supervisor, Plaintiff "must first show the supervisor's subordinates violated the constitution." *Serna*, 455 F.3d at 1151. Because Plaintiff has not stated a constitutional violation against any Defendant, a supervisor cannot have any liability. *Id.* Therefore, these Defendants are also entitled to summary judgment on the excessive force claims.

### F.     Injunctive Relief

Finally, Plaintiff claims that IMPP 12-1111 is unconstitutional in that it violates his Eighth Amendment right to be free from cruel and unusual punishment. Plaintiff alleges that the policy is malicious and sadistic to an evolving society. Plaintiff further alleges that he was subjected to force pursuant to the policy while he was non-combative and non-threatening on May 20, 2017. Plaintiff seeks to enjoin Defendants Schnurr and Burris from using pepper spray under the policy

when a prisoner is non-combative.  (Doc. 30 at 5.)  Defendants move for dismissal of this claim on the basis that it is moot due to his movement from HCF to Sedgwick County.

A claim for injunctive relief is moot if it would have no real world effect on Plaintiff.  *See Evans v. Heimgartner*, No. 16-3095-DDC, 2018 WL 3055843, at *10 (D. Kan. June 20, 2018) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)).  Defendants argue that the claim is moot because Plaintiff has been transferred to Sedgwick County.  Plaintiff's affidavit states that he is housed temporarily in Sedgwick County for court and that he will return to HCF after his evidentiary hearing.  Plaintiff also states that he is in the custody of the KDOC until August 29, 2050.  (Doc. 47, Exh. 1 at 11.)  Plaintiff's claims against Schnurr and Burris are stated in their official capacity.  As Plaintiff is in the custody of the state of Kansas and he has introduced facts that would support his return to HCF, the court finds that this issue has not been rendered moot by his temporary placement in Sedgwick County.

Although the claim is not moot, the court finds that Plaintiff has failed to state a claim. Because Plaintiff is a prisoner, this court may sua sponte dismiss any claim that is frivolous or fails to state a claim.  28 U.S.C. § 1915(e)(2).  Plaintiff alleges that IMPP 12-111 is unconstitutional because it allows the use of excessive force.  Plaintiff, however, has not identified any section of the policy that allows the use of excessive force.  The court has already determined that the application of force in this case did not violate Plaintiff's constitutional rights.  Moreover, in order to state a claim against a state official for prospective relief, Plaintiff must allege facts showing an ongoing violation of federal law.  *Merryfield v. Jordan*, 431 F. App'x 743, 746–47 (10th Cir. 2011). Plaintiff has not.  Rather, his allegations pertaining to this claim focus on the conduct of officers on May 20, 2017.  Plaintiff has failed to allege a plausible claim that there is an ongoing violation of his Eighth Amendment right to be free from cruel and unusual punishment.  Plaintiff's allegation

that the policy is sadistic is conclusory. Plaintiff's further allegation that other prisoners have previously filed grievances also does not support an ongoing violation as that allegation does not include any specific factual allegations regarding an ongoing violation, generally refers to past conduct, and involves other prisoners. *See Amaro v. New Mexico*, 737 F. App'x 882, 887 (10th Cir. 2018) (pro se litigant cannot bring claims on behalf of others).

Because Plaintiff has not alleged a plausible claim of an ongoing constitutional violation, Plaintiff's Eighth Amendment claim against Defendants Schnurr and Burris fails to state a claim.

### IV.    Conclusion

Defendants' motion for summary judgment is GRANTED. (Doc. 40.) The clerk is instructed to enter judgment in favor of Defendants.

IT IS SO ORDERED this 1st day of April, 2020.

_s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE